CLARA W. CAMERON

*vs.*

LEWISTON, BRUNSWICK AND BATH STREET RAILWAY.

Sagadahoc.    Opinion February 25, 1908.

*Street Railways.    Negligence.    Leaning Trolley Pole.    Duty to Passengers.*

When the facts disclose a situation, dangerous to life or limb, into which, from its very nature, it is practically certain, even prudent men may be induced to enter, and it is practicable to remove such danger, without injuriously interfering with other rights or privileges, then the court should establish, as the law, the rule which prevents injury or loss of life, rather than that which invites or even permits it. A street railroad is a public corporation. It receives all its privileges from the public. It depends upon the public for its income. It invites and induces the public to ride upon its cars. Great experience makes it familiar with the habits of people so riding and with their natural tendency, with or without reason, to move from seat to seat. With its special means of knowledge, it should be held to anticipate, what is even a matter of common knowledge, that a passenger riding upon one of its cars, may, at any place along the line and while the car is in motion, undertake to change his seat.

It is too narrow a construction, and against good public policy, to hold that it is negligence, per se, on the part of a passenger riding on a trolley car, not to anticipate that a pole may be permitted to stand so near the railroad track, that he cannot, in an erect position and careful manner, pass from one seat in the car to another over the running board without danger of injury from collision with such pole.

It establishes a safer rule of law, to require street railroads to exercise a degree of care sufficient for the protection of their passengers with respect to poles and other obstacles along their rights of way when such protection involves only a question of pecuniary outlay, than to hold that such railroad may be permitted, for the mere purposes of saving expenditure, to continue the maintenance of a structure which may be calculated sooner or later to result in the injury or death of a passenger.

A street railroad owes to its passengers a duty with respect to the proximity to the track of poles and other permanent structures, and that whether, in case of an injury to one of its passengers by coming in contact with a pole or other structures, the defendant was negligent in the location and maintenance thereof, is a question of fact for the jury.

In the case at bar, the chartered rights of the defendant, the location of its tracks and poles by the city, and approval of the same by the railroad commissioners, were all proceedings, assuming them to be in all respects legal, intended to bestow upon the defendant the right to exist, not to destroy. They were calculated to confer upon it the right to exercise all the privileges of its franchise, but not immunity from its negligence.

Although in the case at bar, on the back of each seat in the car on which the plaintiff's intestate was riding at the time of his injury, in legible letters, plainly to be seen, were the words, "Avoid accidents; wait until the car stops," yet this notice must be construed to have been intended by the defendant as a caution to passengers against alighting from a car in motion, and not as an exemption from its own negligence: If not so intended it was calculated to so impress the mind of the ordinary passenger.

The court will sustain in favor of a verdict every inference of fact that can be deduced from the evidence, when considered in the light most favorable to contention of the winning party.

On motion by defendant.     Overruled.

Action on the case brought by the plaintiff as administratrix of the estate of her husband, Lewis Cameron, to recover damages sustained by her said husband while a passenger on one of the defendant's street cars on lower Washington Street, Bath, caused by the alleged negligence of the defendant, and which said injuries subsequently resulted in the death of the plaintiff's intestate. Plea, the general issue.

The declaration in the plaintiff's writ was as follows:

"In a plea of the case, for that the defendant is, and on the third day of July, 1906, was a corporation owning and operating a street railway in said Bath, and using in its business cars driven by electricity, by the trolley system, through a street, in said Bath, known as lower Washington Street. And said intestate, on the said day of July, 1906, was a passenger on one of the defendant's open cars, then running on said street in a northerly direction and was lawfully standing on and moving along the running board of said car, and while he was so standing and moving, and when said car was passing a certain trolley pole, near Weeks Street, which was then and there supporting the defendant's trolley wire, and slanting towards the defendant's track, and situated in such close and dangerous proximity to said track, that there was no room for a person, though in the exercise of due care, to stand between said

car and said pole without being struck by the latter, said intestate, who was in the exercise of due care and caution, was violently struck by said pole, and thrown to the ground, and solely as a result of the injuries he thus sustained, he thereafter suffered great pain, was put to great expense for medical care and treatment, and on the fifteenth day of July, 1906, he died. The plaintiff further avers that said car was not then furnished with a guard rail on the side of said pole, or any other shield or protection between the passenger on said car and said pole, and that said injury to said intestate and his subsequent suffering and death, and the expense incurred as aforesaid were caused solely by the negligence of the defendant in maintaining its said track, and in running its said car in dangerous proximity to said pole, as aforesaid, and without the protection which would have been afforded by a guard rail or other shield, and were in no respect due to any negligence or want of care of said intestate. All of which suffering and expense were to the damage of said intestate, in his lifetime, in the sum of ten thousand dollars, which sum the defendant has never paid to said intestate or to the plaintiff since his decease, and which shall then and there be. made to appear with other due damages."

Tried at the August term, 1907, of the Supreme Judicial Court, Sagadahoc County. Verdict for plaintiff for $2,875. The defendant then filed a general motion to have the verdict set aside.

The case appears in the opinion.

*Barret Potter and A. N. Williams*, for plaintiff.

*W. H. Newell*, for defendant.

SITTING : EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

SPEAR, J. This case involves an action for damages by the plaintiff, as administratrix, for injuries received by her husband while riding as a passenger upon the defendant's car on lower Washington street in the City of Bath alleged to have been caused by the defendant's negligence.

The facts show that the plaintiff's intestate boarded an open car

going northerly toward Bath in the early evening.   At first he sat upon one of the rear seats.   He sat for a minute or so, then, while the car was in motion, stepped to the running board on the pole side of the car, for the apparent purpose of taking a seat nearer the front.   In so doing he was struck by a trolley pole and was so injured by the impact that he died in eleven days.   The seating capacity of the car was 72.   There were upon it from 16 to 20 passengers.   The side of the pole toward the track was $30\frac{3}{4}$ inches from the east rail at the ground.   It leaned toward the track so that six feet up it was $28\frac{3}{4}$ inches to a point vertically above the east side of the east rail, that is, the pole leaned two inches in six feet. The car was 7 feet 9 inches wide, the running board $8\frac{1}{2}$ inches wide, $16\frac{1}{2}$ inches from the ground and 16 inches below the floor of the car.   It was $3\frac{1}{2}$ inches from the running board to the pole. At a distance of $5\frac{1}{2}$ feet above the running board it was $8\frac{1}{2}$ inches from the grab handle to the pole.   As the handle projected outward from the side of the car $3\frac{1}{2}$ inches, it was exactly one foot from the side of the car between the grab handles and the pole, $5\frac{1}{2}$ feet above the running board.   The decedent was about $5\frac{1}{2}$ feet in height and weighed about 160 pounds.   The car was going at a reasonable rate of speed.   The track is laid on the easterly side of the street, the highway travel being westerly of the track.

The deceased was a spar manufacturer with his place of business on the same side of the street as the track.   His residence where he had lived four or five years prior to the accident was on the same side of the street, and both were a short distance only from the trolley pole by which he was injured.   He frequently rode past it on the car to the city.

There is so little conflict between the testimony of the plaintiff and the defendant with respect to the above statement of facts that, for the purposes of consideration in this case, they may be regarded as undisputed.   In favor of a verdict the court will sustain every inference of fact that can be deduced from the evidence, considered in the light most favorable to the contention of the winning party.

Therefore, in addition to the conceded facts, the jury were also authorized to find from the evidence that the plaintiff's intestate in

attempting to move from one seat in the car to another, was standing erect upon the running board when struck by the pole, and, in all other respects, in the exercise of due care, if the act itself, however carefully performed, was not negligence, per se; that at the height of a man's head and shoulders above the running board, the distance was only 8½ inches between the grab handles and the pole, or one foot between the side of the car and the pole; that while the car was passing that pole a man of ordinary size, or even less, standing on the running board and facing the direction in which the car was going, could not however closely he clung to the side of the car avoid a collision with the pole; that the defendant at the time did not give any notice to the occupants of the car, and that it had never given any notice, of the proximity of the pole to the car, and that it appeared to have been the only pole in that vicinity that was dangerous to a man standing on the running board of an ordinary car; that while the plaintiff had general knowledge that there was a line of poles along the east side of the track, he had no specific knowledge of the proximity of the particular pole by which he was injured.

It also appeared that upon the back of each seat, in legible letters plainly to be seen, were the words: "Avoid accidents; wait until the car stops."

The defendant also put in evidence as a part of its case, the charter of the railroad company and the records of the city of Bath tending to show a legal location of the railroad, and particularly, the legal location of the track and poles, including the pole upon which the plaintiff was injured, on the east side of Washington Street where the accident occurred. For the purposes of this case a legal location may be conceded.

Under this evidence three questions were submitted to the jury. (1) Was the defendant negligent? (2) Was the plaintiff's intestate guilty of contributory negligence? (3) The assessment of damages. It is admitted that the amount of damages if maintainable is reasonable. No further allusion therefore will be made to this question. The jury found upon the other questions that the

defendant was guilty of negligence, and that the decedent was not guilty of contributory negligence, or, affirmatively stated, was in the exercise of due care.

(1)    Was the defendant negligent?

The ground upon which the defendant claims exemption, as we understand it, is that it had a right to maintain a pole as near to its track or car as it pleased, provided it did not come in contact with passengers occupying seats in the car, or with those riding elsewhere with the permission of the company.   In other words that the plaintiff had no right to move from seat to seat as he was attempting to do, and that consequently the defendant owed no duty to him while so doing.   This must necessarily be the defendant's position as it requires no argument to demonstrate that it was not authorized to maintain a pole in such a position as to injure a passenger in any situation upon the car where he had a right to be.   If the plaintiff had no right to be upon the running board, the defendant was not negligent; if he did have a right to be there, then it is a question of fact for the jury to say whether he exercised that right in a prudent or negligent manner.   As the negligence of the defendant depends upon the duty owed to the plaintiff, it is evident that these two questions must become more or less blended, even in an endeavor to discuss them separately.

We do not understand that the defendant seriously questions the propriety of the verdict if the facts conceded and inferred by the jury were sufficient to constitute the basis of a legal cause of action, but emphatically urges that the controlling fact in the case, that the decedent was voluntarily moving by way of the running board from one seat in the car to another, was evidence, per se, of negligence; an act which the defendant could not be reasonably held to have anticipated; while the location and use of the pole upon which he was injured, were facts which the decedent should be held to have anticipated and that, consequently, the verdict of the jury, admitting all the facts to be true, was erroneous in law.

Of course it follows, if the defendant owed no duty to a passenger upon one of its cars, who attempted to move while the car was in motion from one seat to another by way of the running board, it

was not guilty of negligence in setting or using a pole erected at any distance from the running board, however near. On the other hand, if the defendant did owe to a passenger upon its cars the duty of using poles, erected at such a distance from the running board that a passenger, standing erect and otherwise in the exercise of due care, could pass from one seat in the car to another without danger of collision with the pole, then, whether the defendant should be held to be negligent in using a pole thus located was a question of fact to be submitted to the jury.

It is too narrow a construction, and against good public policy, to hold that it is negligence, per se, on the part of a passenger riding on a trolley car, not to anticipate that a pole may be permitted to stand so near the railroad track, that he cannot, in an erect position and careful manner, pass from one seat in the car to another over the running board without danger of injury from collision with such pole.

The defendant is a public corporation. It receives all its privileges from the public. It depends upon the public for its income. It invites and induces the public to ride upon its cars. Great experience makes it familiar with the habits of people so riding and with their natural tendency, with or without reason, to move from seat to seat. With its special means of knowledge, it should be held to anticipate, what is even a matter of common knowledge, that a passenger riding upon one of its cars, may, at any place along the line and while the car is in motion, undertake to change his seat. Who has not done it? It establishes a safer rule of law, to require street railroads to exercise a degree of care sufficient for the protection of their passengers with respect to poles and other obstacles along their rights of way, when such protection involves only a question of pecuniary outlay, than to hold that such railroad may be permitted, for the mere purpose of saving expenditure, to continue the maintenance of a structure which may be calculated sooner or later to result in the injury or death of a passenger.

When the facts disclose a situation, dangerous to life or limb, into which, from its very nature, it is practically certain, even prudent men may be induced to enter, and it is practicable to

remove such danger, without injuriously interfering with other rights or privileges, then the court should establish, as the law, the rule which prevents injury or loss of life, rather than that which invites, or even permits it.

We believe it to be a better and safer rule in the case at bar to hold, that the exercise of due care required that the defendant company should have moved the fatal pole in question such a distance from its track, as would have enabled the decedent to have done, just what he did do, without injury, than to say that the defendant has a right to continue the pole as it was then located, and thereby subject its future passengers to the constant menace of injury or death.

Not only is this rule based upon reason and good public policy but it is the well settled law.

In *San Antonio* v. *Bryant*, 30 Texas Civ. App. 437, the plaintiff was on the running board moving toward a vacant seat. While crossing a bridge, the space between the bridge and the car not being sufficient to allow his body to pass, he was struck by the bridge and injured. This was held to constitute negligence on the part of the road.

In *Elliott* v. *Newport Street Railway Company*, 18 R. I. 707, the court held : "A passenger who rides on the foot-board of a car necessarily takes on himself the duty of looking out for and protecting himself against the usual and obvious perils of riding there ; such, for instance, as injury from passing vehicles, or of being thrown off by the swaying or jolting of the car ; assuming, of course, proper management of the car and proper construction and condition of the road. We do not think, however, that the danger of being hit by a trolley pole is such a peril as a passenger whom the railroad company has undertaken to carry on the foot-board of its car is bound to anticipate and be on the lookout for ; unless, indeed, it appears that the passenger had knowledge of the close proximity of the track to the trolley pole. He has a right to assume that the railway company has performed its duty in so constructing its road that its passengers, even on the foot-boards of its

cars, riding there by its permission, shall not be exposed to injury by the unsafe construction of its road."

The facts in this case show that the plaintiff was riding on the foot-board with the acquiescence of the company, the car being filled with passengers, but this fact does not distinguish it in principle from the case at bar.  It is as much a matter of common knowledge that passengers, with the permission of the company, move from seat to seat while the cars are in motion, as that they ride upon the running board when the seats are full.  A person standing upon the running board for the purpose of changing his seat is no more bound to anticipate the dangerous proximity of a pole to the car, than a person riding on the running board because the seats are full.  While different motives may prompt them to occupy the running board, the fact of occupancy, and all the dangers surrounding it, are precisely the same. · Every reason which can be urged for anticipating danger in the one case obtains with equal force in the other.

In *North Chicago Street Railroad Co.* v. *Williams*, 140 Ill. 275, the court say :  "When a railroad company places its track so near an obstruction which it is necessary for its cars to pass, that its passengers, in getting on and off its cars and while riding upon them, are in danger of being injured by contact with such obstruction, it is a fair question for the jury whether the company is or is not guilty of negligence."

In *Anderson* v. *Railway*, 42 Oregon, 505, the court say :  "The authorities all agree that it is negligence for a street railway company to permit permanent obstructions to stand so near its tracks that passengers getting on and off its cars or riding thereon, are in · danger of coming in contact therewith, and it is generally considered a question for the jury as to whether a given obstruction is so situated."  This opinion cites numerous cases.  To the same effect are *W. Chicago Street Railroad Co.* v. *Marks*, 182 Ill. 15 ; *Mason* v. *St. Railway*, 190 Mass. 255; *Nugent* v. *B. C. & M. Railroad*, 80 Maine, 62 ; *Withee* v. *Traction Company*, 98 Maine, 61, and *Stone* v. *Street Railway*, 99 Maine, 243, while not in point, have some bearing upon the principle here involved.  Our

conclusion upon this point is, that street railways do owe their passengers a duty with respect to the proximity to the track of poles and other permanent structures, and that whether, in case of an injury to one of their passengers by coming in contact with a pole or other structure, the defendant was negligent in the location and maintenance thereof, is a question of fact for the jury.

While the defendant put in evidence all the records pertaining to its chartered rights, the location of its tracks and poles by the city, and approval of the same by the railroad commissioners, as an element of defense, it has laid but little stress upon these features in the argument, yet perhaps all they would bear. All these proceedings, assuming them to be in all respects legal, were intended to bestow upon the defendant the right to exist, not to destroy. They were calculated to confer upon it the right to exercise all the privileges of its franchise, but not immunity from its negligence. They do not, therefore, exempt it from the consequences of its negligent acts.

The verdict of the jury upon the question of the defendant's negligence was fully warranted by the evidence and clearly right.

(2) Was the plaintiff's intestate guilty of contributory negligence? We have already stated the facts, and inferences from the facts, authorized to be found by the jury, and held as a matter of law that it was not negligence, per se, for the decedent to have attempted to move from one seat to another as he did when he was injured. The only question of fact therefore left for discussion is whether the evidence warranted the finding that the decedent while in the attempted act of moving was in the exercise of due care. We have already suggested that the jury were authorized to infer from the evidence "that the plaintiff's intestate in attempting to move from one seat in the car to another was standing erect upon the running board when struck by the pole and in all other respects in the exercise of due care." The only explanation which need be here added is that the phrase "and in all other respects in the exercise of due care" is intended to mean that the accident producing the decedent's injuries was not due to any of the ordinary risks assumed by a passenger who undertakes to ride upon the running board of a trolley car, such as the meeting of other vehicles, the jolting and jostling of the car, or the sudden rounding of a curve,

and that he was not swinging himself out from the car in such a manner that the unnecessary swerving of his head and body, to accomplish his purpose, contributed to the accident.

The defendant, however, contends that, admitting all the facts and inferences found by the jury to be true, yet the decedent was guilty in law of negligence, per se, in standing upon the running board as the evidence shows he did. As to what constitutes contributory negligence, there are two broad classes of cases promulgated by the courts of this country, one holding that electric railroads should be governed by the rules of law applied to the operation of horse railroads, the other that they should come within the analogy of steam railroads. In the latter class, it is held to be negligence, per se, to ride upon the platform or running board of a moving car, but in the former class it is otherwise, and the question of negligence is regarded as a question of fact. Several states in the union hold electric roads to the analogy of the steam roads, but a large majority of the states, including Maine, have established the other rule. This question was specifically raised in *Watson* v. *Portland & Cape Elizabeth Ry. Co.*, 91 Maine, 584. In this case the passenger was voluntarily riding upon the front platform of the car. The car was rounding a sharp curve approaching a switch with such speed that the motorman was unable to see whether it was properly set or not, and, the switch being open, the car was propelled so rapidly on the siding as to cause violent jarring and jolting. The Justice in ordering a nonsuit said to the jury, "It is settled as a legal question that one who rides upon the platform of a car, and is injured by being thrown from it as the car rounds a curve, is guilty of contributory negligence." In other words, that the mere fact of voluntarily riding upon the front platform of a car constituted negligence, per se. But the court held otherwise, saying: "In our opinion this was not a correct statement of law when applied to a street railroad car, whether propelled by horses, electricity or otherwise. Riding upon the platform of such cars is too much encouraged by transportation companies and too much indulged in by the public, for the court to say, as a matter of law, that the mere riding upon the platform of such a car is conclu-

sive evidence of negligence, or is negligence per se, or is negligence in law. It depends upon too many other circumstances and conditions for a court to lay down any hard and fast rule in regard to it; but it is a fact which should ordinarily be submitted to the jury in connection with all of the other circumstances of the case."

The principle enunciated in this case and the reasons therefor, are as clearly applicable to the situation of a passenger riding upon the running board as to one riding upon the platform.

In *San Antonio Traction Co.* v. *Bryant*, 30 Texas Civ. App. 437, the Maine rule is applied to the running board, and the court say : "It is not negligence per se to stand upon the platform, steps or running board of an electric street car which is crowded ; and the weight of authority supports the rule that it is not contributory negligence as a matter of law for a passenger to stand upon the platform of a car or running board, whether there be vacant seats or not in the inside of the car, and whether the passenger be standing on the platform, running board or steps, the question of contributory negligence is held to be in a majority of cases, for the jury to determine." See also Fort Wayne Traction Co. & Hardendrof (Ind.) St. Ry. Reps. Vol. 164-172. Joyce on Electric Law, section 540 ; Thompson on Negligence 3, sections 3572-3577. The last two authorities are precisely in point.

It is not the result of the Maine rule that a passenger assumes no risk by riding on the platform or running board of a moving car, for it is well settled law that he must assume all the usual and obvious perils attendant upon his position. It simply declares that the question of a passenger's negligence and assumption of risks, while riding upon the platform or running board of a street car, shall be submitted to the jury as a question of fact.

Another defense suggested is, that the plaintiff's intestate must have had knowledge of the proximity to the track of the pole upon which he was injured, or by the exercise of due care ought to have known it. This would undoubtedly afford a good defense if established, but it was a question for the jury, *Withee* v. *Traction Co.*, 98 Maine, 61, and upon this proposition the jury found in favor of the plaintiff. Upon this contention we find no adequate reason for dis-

turbing the verdict. It may be conceded that the decedent had a general knowledge that the poles in the vicinity where he was injured were near the track, but such knowledge, unless he knew they were near enough to be dangerous to one standing on the running board with due care, would not charge him with contributory negligence. *Withee* v. *Traction Co.*, supra; *Nugent* v. *B. C. & M. Railroad*, 80 Maine, 62; *Powers* v. *Boston*, 154 Mass. 60; *Ferren* v. *Old Colony Railroad Co.*, 143 Mass. 197; *Wheeler* v. *Company*, 70 N. J. L. 725; 58 Atlantic R. 927; 3 Street Railway Reports, 631; *Hesse* v. *Company*, 54 Atlantic Reporter, 299.

The only other defense interposed is that upon the back of each seat was plainly and legibly written the words, "Avoid accidents; wait until the car stops," which the defendant claims the plaintiff must have seen, and was, therefore, direct notice to him not to occupy the running board while the car was in motion, and that, if he did so, he assumed the risk of whatever might happen, and was also guilty of contributory negligence in doing a forbidden act. While the evidence in the case might have justified the jury in finding a waiver of the notice, if construed as the defendant contends, yet it is unnecessary to consider this question, as the notice will not bear the construction urged. This notice must be construed to have been intended by the defendant as a caution to passengers against alighting from a car in motion, and not as an exemption from its own negligence. If not so intended, it was calculated to so impress the mind of the ordinary passenger,

An allusion to the reason for the notice seems to determine its purpose. One can move about upon the surface of a moving body, subject only to those dangers incident to the motion. But it is a universal law, that, if a person alights from a moving vehicle, he is subject to the inevitable tendency of being hurled to the ground in the direction of the motion. Jumping from moving cars, with frequent injury, always has been, and is now, a practice of such common occurrence, that the notice upon the back of the seats was undoubtedly intended to operate as a check upon the natural inclination of passengers to alight from a car before it stops, when approaching a stopping place.

*Motion overruled.*